JONES v. McWATTY, guardian.

The premises in dispute being bounded by a county line, the jurisdiction of the court, as well as the rights of the parties, depends upon the conformity of the verdict to the evidence as to the situation of the premises relatively to that line. The verdict in this case, though a second one for the same party, being contrary to evidence, must be set aside.

April 21, 1890.

Jurisdiction. Boundaries. Verdict. Evidence. Before Judge HINES. Washington superior court. September term, 1889.

Action of complaint for land described as lying in the county of Washington on the waters of Neeley's creek, containing thirty acres, bounded by lands of Mrs. Martha Greenway, defendant, Robert Whitfield and Thomas Miller. The defendant pleaded the general issue, and that the land did not lie in Washington county, where the suit was brought, but in the county of Johnson.

Upon the trial, the plaintiff introduced a grant from the State of Georgia to Thomas McWatty for 745 acres of land, having for its southern boundary the Eucher trail; dated September 8, 1838. Plaintiff then showed that McWatty bequeathed the lands covered by the grant to his daughter, who had died leaving Thomas Miller as her sole heir, and that plaintiff had been duly appointed guardian for Miller. The evidence for plaintiff further tended to show that in 1886, plaintiff had a surveyor, Jackson, to make a survey of the Thomas McWatty grant. The Eucher trail is the dividing line between the McWatty grant and the grant under which defendant holds, known as the Greenway grant, and it is also the dividing line between the counties of Washington and Johnson. Jackson did not know the true location of the Eucher trail except from McWatty' grant, nor did he know the true corners of the McWatty survey. When he made the survey in 1886, he started at a point that plaintiff told him was a corner of the McWatty grant (defendant not being then present), and ran in the direction of the Eucher trail. Defendant joined Jackson and plaintiff, and stopped them at a point he claimed to be the Eucher trail when they had run in said direction 41 chains, the McWatty survey calling for 56 chains. At the point at which they were stopped they turned and ran the next line called for by the McWatty survey, along an old road, but found no marked trees to indicate that said line was

the Eucher trail. The magnetic meridian changes slightly every year, and in running a survey as old as the McWatty grant the true courses could only be reached by an approximation. While these old surveys are frequently incorrect, they more often contain more land than they call for. Some time after 1886 Jackson, as county surveyor, laid out a district and then had occasion to run the Eucher trail, but did not run it along the line claimed by defendant to be the trail. The trail as he ran it was but a few yards north of defendant's house and was south of the point at which they were stopped by defendant in 1886. Jackson did not know how much land was embraced between the line run by him in 1886 and the Eucher trail as run by him last. The plat made by Jackson in 1886 was introduced as evidence. The plaintiff testified positively that the land in dispute was embraced in the McWatty grant, that when the survey was made in 1886, defendant was in possession of the disputed premises, which contained about twenty-nine acres, and that the land in dispute lay in Washington county, the Eucher trail being the southern boundary of the McWatty grant; but he did not know where that trail was except as located by Jackson's survey in 1886, and as the lines around the disputed premises were not run, defendant stopping him and Jackson, he could only approximate the quantity of land in dispute. If the Eucher trail be where defendant claims and where he stopped them, the land in dispute is in Johnson county, and is not embraced in the McWatty grant. As guardian he was duly served with a notice by defendant that the lines around his land would be run by processioners August 9, 1887, and was present at the survey. These processioners ran what they decided was the Eucher trail, and located it about where defendant stopped Jackson in 1886. To the survey as made by the processioners plaintiff never made or filed any exception.

For the defendant it was shown that he claimed under the Greenway grant, which was made on March 25, 1864, and the land covered by which was bounded by the Eucher trail, or Washington county line, on one side, the other boundaries being unknown, containing 57 acres as shown by the annexed plat, according to which plat the land lay east of Neeley's creek; that this Greenway deeded the land to another, the land being described in this deed as lying on the waters of Neeley's creek, containing 50 acres more or less, and adjoining lands of Robert Whitfield, said Greenway and others, who sold it to defendant on March 2, 1886, at which time he went into possession, in which deed the land is described as lying on the waters of Neeley's creek adjoining lands of Robert Whitfield and lands of the estate of said Greenway and others, and containing 89 acres. The county surveyor of Johnson county testified that on August 9, 1887, he with the processioners ran the Greenway survey and processioned the Eucher trail line between plaintiff and defendant, plaintiff being present and making no objection; that the line then run as the Eucher trail was the line run by Jackson in 1886 from the point at which he was stopped by defendant, sometimes along and at other places a little north of the old road along which Jackson ran when laying out the district; that along the line thus run were found a few blazed trees, most of them to the south of the line thus run, showing that years ago a line had been run there; that witness and the processioners ran a straight line and did not follow the blazes all the way, running a little north of some of the marked trees in order to make a straight line between the station trees found; and that by the Eucher trail as thus run, the land in dispute was covered by the Greenway and not the McWatty survey. Another witness testified that he lived about a mile from the Eucher trail and

had had it pointed out to him frequently by the early settlers, and had known exactly where it was more than fifty years; that there were three objects by which the trail is located, a walnut tree, a pine stump and a ford on the creek, and between these points was occasionally found a blazed tree; that witness and others testified before the processioners mentioned, and that the line as run by the processioners was correctly run, and the land was located in Johnson county. Robert Whitfield testified that he was about sixty years old and had lived a very short distance from the Eucher trail all his life, and had known its location about forty-five years. He testified similarly to the last witness as to the objects by which the trail was located, that he was present when it was established by the processioners, and that it was correctly established. The processioners ran around the entire Greenway survey, and the land in dispute is embraced in the survey. He further testified that in November, 1889, suit was brought against him by the plaintiff for a portion of the premises in dispute; that the land for which he was sued was embraced in the plat made by Jackson in 1886, and was 41 acres located on the west side of Neeley's creek, the land claimed by Jones, as shown by Jackson's survey, being located on the east side; that he has been in possession of the land for which he was sued twenty-nine years, and that there is not nor has there been any privity of title or possession between him and Jones, or those under whom Jones claims.

The defendant excepted to the denial of a new trial, after verdict as stated in the opinion.

HARRIS & RAWLINGS, by HARRISON & PEEPLES, for plaintiff in error.

EVANS & EVANS, E. J. HUDSON and T. H. POTTER, *contra.*

BLECKLEY, Chief Justice.

The jury found in favor of the plaintiff the premises in dispute and a certain amount for mesne profits. The court thought the finding wrong as to the mesne profits, and ordered a new trial unless the plaintiff would write them off. The plaintiff having done this, the verdict was left to stand as to the premises. We think the verdict should have been set aside as a whole, unconditionally. Not only the weight of the evidence was with the defendant below, but the whole of it in so far as it rested upon actual knowledge or professed knowledge by the witnesses examined. The decisive matter was the location of the Eucher trail. This trail is the boundary between Johnson and Washington counties, and is also the dividing line between the lands of the parties to this litigation. If the land in dispute lies on one side of the trail, it is covered by the McWatty grant and is in Washington county, but if on the other side of the trail, it is in Johnson county and is not embraced in that grant. None of the witnesses who testified in behalf of the plaintiff below professed to know where the trail was. Two of those who testified for the defendant said they did know, and they both pointed out three objects, a ford, a walnut tree and a pine stump, as marking the location of the trail, and both of them testified that the disputed premises lay in Johnson county, not in Washington county. One of these witnesses was, so far as appears, wholly disinterested in the present controversy. They were sixty years of age or over, had lived in the neighborhood a great length of time, and their knowledge of the trail dated back forty or fifty years. There was nothing to suggest any error in their testimony, save perhaps the fact that the land granted to McWatty would not hold out in measurement so as to correspond with the grant and the plat annexed thereto, without pushing the trail

farther away than the location pointed out by these witnesses. It is altogether improbable that the county line between Johnson and Washington has been lost in the brief time which has elapsed since the creation of Johnson county in 1858. The dividing line must then have been known, and it is not probable that some of the citizens in the neighborhood should not still know it. Here are two who profess to have that knowledge and who show by their evidence that they have had opportunity to become correctly informed. This trail is not mentioned by name in the act organizing the county of Johnson. But we may take it for granted either that the line has been since changed so as to correspond with the Eucher trail, or else that the trail, though not named, coincides with some part of the, boundary described in the act in other terms, for both parties to this litigation agree in recognizing the Eucher trail as the dividing line between the two counties and as the boundary of the McWatty grant. According to the evidence as it comes up to us in this record, the land in dispute lies in Johnson county. And it follows not only that the plaintiff has no title to it by virtue of the McWatty grant, but that the superior court of Washington county has no jurisdiction to adjudicate the question of title in this action. This question of jurisdiction renders it necessary that we should be more than usually careful to see that the evidence upholds the verdict. For, unless it does so, the verdict is not only wrong in its result upon the rights of the parties litigant, but is rendered in a court which has no jurisdiction. In such a case, that there has been a previous verdict for the same party has no weight. Until it is shown by evidence that the land lies in Washington county, any number of verdicts declaring, contrary to evidence, that it does lie there, will not serve to establish the jurisdiction; and without the jurisdiction being established there can be no finality upon the question of title.            *Judgment reversed.*